**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

VALENTINO MAGHEE,

              Petitioner,

vs.

JOHN AULT,

              Respondent.

No. C03-0068-MWB

**REPORT AND RECOMMENDATION
ON PETITION FOR WRIT OF
*HABEAS CORPUS***

_____

       This matter is before the court on the Amended and Substituted Petition for Writ of *Habeas Corpus* filed by the petitioner Valentino Maghee. Doc. No. 18. Maghee currently is serving a thirty-year sentence after a conviction in the state courts of Iowa.

       Maghee's petition concerns disciplinary action taken against him on October 13, 1998, at the Anamosa State Penitentiary in Anamosa, Iowa ("ASP"). The disciplinary action arose from Maghee's attempt to mail a sealed letter to his lawyer, on or about October 4, 1998. Maghee describes the basis for his claim as follows:

          The discipline in this case was for misuse of mail. Specifically Mr. Maghee was disciplined for supposedly not following the proper procedures in connection with mailing a letter to a lawyer. Mr. Maghee put the envelope up on his bars to be picked up by an officer. As he normally does at Anamosa[,] Mr. Maghee had already sealed it at that point.

          An officer told Mr. Maghee that the contents of the envelope would have to be inspected. The officer told Mr. Maghee that he could mail it out if he allowed the officer to inspect the contents. The officer, however, wanted to do this inspection back at the officer's desk, rather than in front of Mr. Maghee.

          Mr. Maghee told the officer to forget it and he would just take care of giving the letter to the officer on the next shift. During the next shift, Mr. Maghee put the same sealed

envelope up on the bars. A different officer took it, and Mr. Maghee thought that the letter was being mailed out.

That second officer, however, placed it someplace to be mailed, where the original officer saw it. That officer concluded at that point that Mr. Maghee was circumventing prison rules and disciplined him accordingly.

The hearing officer took evidence on the matter from Mr. Maghee and found him guilty.

The discipline violates Mr. Maghee's rights under the First Amendment to communicate with a lawyer. Such communication can and should be confidential. Inspection of such mail should be allowed only in the presence of the inmate. That option wasn't given to Mr. Maghee by the original officer. The second officer seemed to be perfectly willing to allow Mr. Maghee to send out a sealed letter to his lawyer. Mr[.] Maghee should not be punished for sending out a confidential [letter] to his lawyer when some of the staff at Anamosa are prepared to allow him to put the envelope into the mail in a sealed condition. Mr. Maghee in his *pro se* fashion raised the claim that the actions violated the Constitution.

Doc. No. 18, ¶ 12.

As a result of the disciplinary proceedings, Maghee received five days' disciplinary detention and the loss of sixteen days of good conduct time. Maghee filed an administrative appeal of the disciplinary action, which was denied. He filed an application for postconviction relief, which also was denied, and an appeal, which was denied. In all of these proceedings, Maghee represented himself *pro se.*[1]

---

[1]The Iowa Supreme Court initially appointed an attorney to represent Maghee in his appeal from the denial of post-conviction relief. The State moved to have counsel withdrawn, and after an interlocutory appeal on the issue, Maghee's court-appointed attorney was withdrawn from the appeal. The court finds the issues relating to that portion of the case are not relevant to consideration of Maghee's petition in the present action.

Procedendo issued from the Iowa Supreme Court on May 23, 2003, bringing to an end Maghee's available remedies in the state courts of Iowa. Maghee timely filed the present action on June 9, 2003, to challenge his conviction in the disciplinary action.

## I. UNDERLYING FACTS

The facts underlying the disciplinary action were developed in an evidentiary hearing in Maghee's *pro se* PCR action. A transcript of the hearing is part of the current record. *See* Doc. No. 29-2. Also part of the record before the court are the original disciplinary notice, the ruling of the ALJ in the disciplinary proceeding, Maghee's application for post-conviction relief, the PCR court's ruling, and documents from Maghee's interlocutory appeal regarding whether he had a right to counsel in the PCR appeal. From its review of the entire record, the court makes the following findings of fact.

On or about October 4, 1998, Maghee, who was an inmate at ASP, prepared a sealed envelope to send to attorney Gene Maddox. Maghee put the sealed letter on the bars of his cell for pickup. Officer Isaac picked up the letter for mailing, and he told Maghee the contents of the envelope should have been inspected before the letter was sealed. Maghee stated he had always sealed his legal mail without the contents being inspected first. He claims Officer Isaac agreed to show him the institution's policy regarding inspection of legal mail, but never returned with the policy. Maghee stated he had no objection to Officer Isaac's opening the letter and inspecting its contents in Maghee's presence. However, he claims Officer Isaac then wanted to take the letter back to his desk to reseal it. Maghee objected to Officer Isaac's inspection of the contents outside of his presence because he did not want the officer to read what he had written. He asked the officer to bring some tape to his cell, stating they could open the letter

together, the officer could inspect the contents for contraband, and then Maghee could reseal it. When Officer Isaac declined, Maghee told the officer he would just wait and give the letter to another officer on another shift. Maghee placed the letter on his cell bars for pickup the next day. An officer picked up the letter and took it to the mail room, where it was intercepted by Officer Isaac.

Officer Isaac wrote a disciplinary notice dated October 5, 1998, charging Maghee with violating Rules 23, 27, 40, and 43. The disciplinary notice stated as follows:

> On 10-4-98 at about 8:00 p.m. inmate Maghee tried to send a sealed envelope out in the mail to a Gene Maddox[,] 2024 N.W. 92 Ct. Suite 15[,] Clive[,] Iowa 50325. I asked inmate Maghee why he sealed the envelope without an officer inspecting it first? Inmate Maghee replied that it was legal and it didn't need to be inspected. I told inmate Maghee that it would not be sent out without an officer or mailroom staff first seeing what he sealed in the envelope. I told inmate Maghee that he either opened the existing letter and resealed it with tape or he got himself another envelope and allowed staff to inspect the outgoing letter before he sealed it. Inmate Maghee stated that he would just forget it and get day shift to take it to the mailroom. On 10-5-98 at 2:30 I got to work and I found that inmate Maghee had in fact sent the letter out with an officer. The letter was in the desk drawer. It clearly states in the segregated inmates Rules and Procedures, General order number nine[,] Page eleven[,] section four[,] subsection A, Legal mail shall be inspected by staff prior to being sent (sealed).

Disciplinary Notice, Class I (Major), dated 10-5-97.

The institutional rules Maghee was charged with violating provide as follows:

23. <u>Disobeying a Lawful Order/Direction</u>: An inmate commits an offense under this subsection when the inmate:
   a) Fails to obey a written rule or posted order;

4

b) Fails to obey a verbal order given by any person in authority or staff of the institution; or

c) Interferes with or circumvents established procedures.

Orders will be reasonable in nature and give reasonable notice of the conduct expected. If the alleged conduct involves violation of a rule or posted order not classified as a major rule, the disciplinary notice as well as the Administrative Law Judge's decision must state adequate reasons (e.g. repetition or severity of the infraction) in addition to the infraction to justify this rule's sanctions.

Class "C" for all violations.

. . .

27. <u>Obstructive/Disruptive Conduct</u>: An inmate commits an offense under this subsection when the inmate:

a) Transmits through any form of communication, threats, demands, or suggestions which advocate disruption of operations of any segment of an institution; including but not limited to gestures, actions, words, or any other type of signals, either verbal, nonverbal, or in writing.

b) Interferes with staff duties or investigation; or

c) Engages in conduct which disrupts or interferes with the security, tranquillity, or orderly running of the institution, including but not limited to, "horseplay;" roughhousing; interfering with a search; making false fire alarms; participating in unauthorized meetings, gatherings, or petitioning; throwing food, liquid, or other objects; spitting; encouraging others to refuse to work or participate in work stoppage; engaging in, or encouraging a group demonstration; jumping lines; smoking in non designated areas; etc.

d) Acts as a jigger or lookout for others and/or uses a form of communication to create a diversion to avoid detection or observation.

e)   Proposes, suggests, or participates (orally, in writing, or actions) in any activity with staff member(s) which interferes with, has the potential to interfere with, or compromises that staff member's judgment, responsibilities, or duties.

Class "B" for violations involving security issues; Class "C" for all other violations.

.   .   .

40.   <u>Misuse of Mail, Telephone, or Other Communications</u>:   Any inmate commits an offense under this subsection when the inmate fails to follow institutional procedures, regulations or instructions, written or verbal, while communicating with another such as through the mail or telephones, or uses such communication without proper authorization, or includes or uses coded messages or symbols.

Class "C" for all violations.

.   .   .

43.   <u>Attempt or Complicity</u>:   An inmate commits an offense under this subsection when the inmate attempts to commit any of the listed offenses or is in complicity with others who are committing or attempting to commit any of the listed offenses.

Class determined by the offense the attempt or complicity relates to.

State of Iowa Department of Corrections, Division of Institutions, Policy and Standards: Disciplinary Policy and Procedure (rev. Aug. 1998) (Doc. No. 29-3; hereafter "Disciplinary Policy"), at pp. 25, 26, 29.

An ALJ found Maghee guilty of violating Rule 40. The ALJ made the following handwritten findings of fact:

On 10-4-97 @ 8 pm. Vern Isaac determined that Maghee tried to send a letter to a Gene Maddox. When asked why it was sealed without an officer inspecting it he said it

was legal and didn't need [to be] inspected. The proper procedure was explained to him. He was given the option of opening and placing in another envelope or opening and having it taped shut after inspection. He stated he would have an officer at a later time mail it for him. The next day Officer Isaac saw the letter in the D-3 desk where a staff had placed it in preparation of mailing.

That's pretty much the way it went said Maghee after the report was read to him.

Decision in No. 1022571A1 dated 10-13-98, Hearing No. 101304.

The ALJ prepared a Disciplinary Hearing Report in which the ALJ recorded the following findings of fact:

Inmate Maghee said that Officer Isaac came by, and he had his envelope on the bars, already sealed. He said he has always sealed his legal mail. Inmate Maghee said Officer Isaac wanted him to open the envelope right there, and then Officer Isaac wanted to take the envelope back to the desk to re-seal it. Inmate Maghee said that this is what he objected to. He said he did tell Officer Isaac that he would just keep the letter and give it to an officer on the next shift. Inmate Maghee said that is what he did the next day[,] he put it on the bars, as he had told Officer Isaac he was going to do and another officer did pick it up. When asked why he refused to let the contents be examined, Maghee had no answer. He said he objected to the letter not being sent out in a timely way. Inmate Maghee questioned whether the rule requiring that contents of legal mail be inspected before they were sealed was a new rule. Inmate Maghee said he had told Officer Isaac to show him this rule, and Officer Isaac never did come back and show this to him.

Disciplinary Hearing Report No. 1022571A-1, Hearing #101304, dated 10/13/98.

The ALJ reached the following decision in the disciplinary action:

> I am finding inmate Maghee guilty of attempting to circumvent established mail procedures. This is based on the report by CO Isaac, and based on Maghee's acknowledgment that he sealed the envelope, and would not comply with the officer[']s directions that the contents had to be inspected before the letter could be mailed. Moreover, inmate Maghee gave the letter to another officer after having been told by Officer Isaac that the contents had to be inspected. Inmate Maghee does not deny any of that. The letter is in evidence. A check with Central Records indicates that the person to whom the letter is addressed is an attorney in Clive, Iowa.

*Id.*

The Disciplinary Policy provides that when an inmate is found guilty by an ALJ of committing a Class C violation, the ALJ may impose any or all of the following sanctions:

> **Class C**
>
> a)    Loss of good time not to exceed 30 days[.]
>
> b)    Disciplinary detention up to 30 days[.]
>
> c)    Loss of any or all privileges, including but not limited to canteen privileges (not including personal hygiene items), visiting privileges, access to jobs and programs, not to exceed 90 days.
>
> d)    Restriction to the cell/unit up to 21 days. (May or may not include routine activities.)
>
> e)    Assess actual costs[.]
>
> f)    Extra duty not to exceed 30 days.
>
> g)    Special conditions (alcohol treatment, drug treatment, anger management, etc.)
>
> h)    Reprimand[.]
>
> i)    Suspend all or part of the sanctions up to 90 days.

Disciplinary Policy at p. 17. In Maghee's case, the ALJ imposed a sanction of five days' disciplinary detention and the loss of 16 days good conduct time. *Id.*

Maghee filed an appeal of the disciplinary action in which he made the following claims:

> C/O Isaac could have very easily taken corrective action by bringing tape to my cell to seal legal mail in my presence pursuant to DOC policy; rather C/O Isaac wanted to take my opened legal mail to his desk, and rather than taking corrective action C/O Isaac opted to (1) issue this erroneous disciplinary action costing taxpayers thousands of dollars in litigation, (2) violated DOC policy, (3) violated federal mail tampering laws, [4] violated federal obstruction of justice laws Title 18 USC § 1506 by delaying the mail which adversely affected court outcome, [5] violated my First Amend. right of access to the court, and [6] violated my 14 Amend. right to due process and equal protection under the law. The State has no interest in C/O Isaac violating federal laws and the federal constitution. Was denied witness Senator Maddox the recip[ient] of the legal mail, other attorneys, judges, and public officials showing inconsistency in C/O Isaac and other staff and denied cellmate Harrington to testify previously C/O Isaac and other staff picked up my legal mail without harassment and pre-sealed. Also I was denied investigative remarks given to investigative officer.

Inmate Appeal if Disciplinary Action dated Oct. 13, 1998.

Upon review of Maghee's disciplinary appeal, the Warden found Maghee had basically restated what he had told the ALJ at the hearing. The Warden denied Maghee's appeal.

Maghee appealed the matter to the Director of the Iowa Department of Corrections. Although the decision from the appeal is not part of the record before the court, it is apparent the appeal was denied. *See* Doc. No. 27 at 3; Doc. No. 28 at 4.

Maghee filed a PCR application in the Iowa District Court in and for Jones County. In his PCR application, Maghee claimed the ASP staff "violated federal mail

tampering laws and federal obstruction of justice laws by delaying legal mail to Senator, who is also an attorney, 8 days." He argued Officer Isaac "wanted to open legal mail and reseal legal mail at his desk outside [Maghee's] presence which is inconsistant [sic] with *Jensen v. Klecker*, 648 F.2d 1179 (8th Cir. 1981)[,] holding legal mail, outgoing or incoming, must be opened and/or sealed in presence of prisoner." PCR App. § II. Maghee claimed the ALJ gave an inadequate statement of the evidence relied upon or reasons for her decision, and claimed he was not allowed to call witnesses. *Id.*

In its opinion on Maghee's PCR application, the PCR trial court noted Maghee had claimed "there was no evidence to support the finding of 'attempting to circumvent established mail procedures' at the Anamosa State Penitentiary in October of 1998[.]" Findings of Fact, Conclusions of Law, and Rulings at 1, *Maghee v. State*, Nos. LACV 001973 and LACV 001974 (Jones County, Iowa, Oct. 1, 2002) (hereafter "PCR Ruling"). However, the PCR court found it was "clear from the record that [Maghee] sealed an envelope, was told by an officer that the contents of the envelope had to be inspected before the mailing of the letter, and that [Maghee], nevertheless, handed the letter to another officer. [Maghee's] testimony to the contrary is not credible." *Id.*

The PCR court reached the following "Conclusions of Law":

> 1. The U.S. Supreme Court has stated the rights to which inmates of state prisons are entitled in prison disciplinary proceedings. Where a prisoner is charged with serious misconduct and is penalized with the loss of good conduct time, the prisoner's rights include: (a) advance written notice of the charges; (b) an opportunity to call witnesses and present documentary evidence, provided it will not jeopardize institutional goals; and (c) a written statement by the factfinder of the evidence upon which is relied and the reasons for the disciplinary action. *James v. State*, 479 N.W.2d 287, 290-91 (Iowa 1991).

> 2. [Maghee] has exhausted his administrative remedies
> and now seeks postconviction relief pursuant to Iowa Code
> Chapter 822. In reviewing for sufficiency of the evidence in
> postconviction proceedings, the court should simply determine
> whether the decision is supported by some facts. *Wilson v.
> Farrier*, 372 N.W.2d 499-502 (Iowa 1985). The relevant
> question is whether there is any evidence in the record which
> could support the conclusion reached by the disciplinary
> committee. *Id.* at 501. Iowa law supports the "some
> evidence" standard for prison disciplinary actions and their
> review by the court. *Backstrom v. Iowa Dist. Court*, 508
> N.W.2d 705, 709 (Iowa 1993).

*Id.* at 2-3. The PCR court then issued a two-sentence ruling, denying Maghee's application for post-conviction relief and assessing costs to Maghee. *Id.* at 3.

Pursuant to Iowa Code section 822.9 and Rule 6.304, Iowa Rules of Appellate Procedure, the Iowa Supreme Court treated Maghee's appeal as a petition for writ of certiorari, and denied his petition without opinion on May 12, 2003.

## II. DISCUSSION

### A. Standard of Review

The United States Supreme Court set forth the standard for federal courts reviewing habeas petitions filed by state prisoners in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The *Williams* analysis focuses on the requirements of the federal *habeas* statute, 28 U.S.C. § 2254, in light of amendments enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The Court held as follows:

> Section 2254(d)(1) defines two categories of cases in which
> a State prisoner may obtain federal habeas relief with respect
> to a claim adjudicated on the merits in State court. Under the
> statute, a federal court may grant a writ of habeas corpus if

> the relevant state-court decision was either (1) "contrary to . . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05, 120 S. Ct. at 1519 (quoting 28 U.S.C. § 2254(d)(1)).

Under the first category, a state-court decision is "contrary to" Supreme Court precedent "if the State court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.*, 529 U.S. at 405, 120 S. Ct. at 1519. The Court explained:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the State court arrives at a conclusion opposite to that reached by this Court on a question of law or if the State court decides a case differently than this Court has on a set of materially indistinguishable facts.

*Id.*, 529 U.S. at 412-13, 120 S. Ct. at 1523. Further, "the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Court's] decisions as of the time of the relevant state-court decision." *Id.*, 529 U.S. at 412, 120 S. Ct. at 1523.

The second category, involving an "unreasonable application" of Supreme Court clearly-established precedent, can arise in one of two ways. As the Court explained:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the State court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular State prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the State court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or

> unreasonably refuses to extend that principle to a new context
> where it should apply.

*Id.*, 529 U.S. at 407, 120 S. Ct. at 1520 (citing *Green v. French*, 143 F.3d 865, 869-70 (4th Cir. 1998)). Thus, where a State court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established federal law.'" *Id*, 529 U.S. at 407-08, 120 S. Ct. at 1520. Notably,

> Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.*, 529 U.S. at 411, 1250 S. Ct. at 1522.

If the State court decision was not contrary to clearly established Federal law, as determined by the Supreme Court of the United States, and if it did not involve an unreasonable application of that law, then the federal court must determine whether the State court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### B. Impact of State Court Decisions

Despite the standard of review set forth by the *Williams* Court, Maghee argues here that the decisions of the Iowa state courts should not be entitled to deference in this court's review, and the pre-AEDPA standard of review should be employed. In most circumstances, the *factual* determinations of the state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Cox v. Burger*, 398 F.3d 1025, 1028 (8th Cir. 2005). However, the petitioner may rebut the presumption of correctness by clear and convincing evidence.

*Id.*  Regarding the deference to be given the state courts' *legal* conclusions, Maghee argues the Iowa courts never reached his First Amendment claim at all, and therefore, because there was no state court adjudication of that claim, the state court determination is entitled to no deference.  *See* Doc. No. 27 at 7-8.

In *Brown v. Luebbers*, 371 F.3d 458 (8th Cir. 2004), *cert. denied*, 125 S. Ct. 1397 (2005), the Eighth Circuit Court of Appeals noted the "AEDPA effected a move toward greater deference in the § 2254 courts' review of state-court decisions."  *Brown*, 371 F.3d at 460 (citing *Lindh v. Murphy*, 521 U.S. 320, 333 n.7, 117 S. Ct. 2059, 2066 n.7, 138 L. Ed. 2d 481 (1997)).  Noting adjudication on the merits is a condition precedent to application of the deferential AEDPA standard of review, the *Brown* court specifically addressed the question of "what constitutes an adjudication on the merits." *Brown*, 371 F.3d at 460-61.  The court answered the question as follows:

> From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment – an adjudication – on a substantive issue – the merits (as compared with a procedural or technical point).  A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy.  One thing is clear – no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits.  That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised.  *Cf. Coleman v. Thompson*, 501 U.S. 722, 739, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the

> case"). We must simply look at what a state court has said,
> case by case, and determine whether the federal constitutional
> claim was considered and rejected by that court.

*Brown*, 371 F.3d at 461. *But see Nancy v. Norris*, 392 F.3d 284 (8th Cir. 2004) ("when a state court specifically disclaims addressing constitutional arguments, at the very least, section 2254(d) does not apply").

Notably, the state courts need not have discussed the constitutional claim explicitly, "so long as neither the reasoning nor the result of the state-court decision contradicts [applicable Supreme Court precedents]." *Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005); *accord Nance v. Norris*, 392 F.3d 284 (8th Cir. 2005), *reh'g en banc denied* (2005). The state court should, however, at least acknowledge that a constitutional claim was raised. *See Brown*, 371 F.3d at 461.

In the present case, Maghee raised a First Amendment objection to Officer Isaac's application of the institution's mail-handling procedure. The court finds neither the PCR trial court nor the Iowa Court of Appeals recognized or addressed Maghee's constitutional claim. Rather the PCR trial court looked to see if Maghee was afforded all the rights he was due *in the disciplinary proceeding* itself. The PCR court affirmed the ALJ's ruling on the basis that Maghee had been afforded the appropriate rights in connection with the disciplinary proceedings, and because there was "some evidence" to support the ALJ's ruling. PCR Ruling at 2-3 (citing Iowa case law). However, neither the ALJ nor the reviewing Iowa state courts addressed the constitutional merits of Maghee's claim that Officer Isaac's suggested method of processing Maghee's legal mail violated his First Amendment rights.

Because Maghee's constitutional claim was not addressed in any manner by the Iowa state courts, this court finds the legal conclusions of the Iowa state courts on Maghee's claim are not entitled to deference. As a result, the standard of review is

*de novo*, "keeping in mind that underlying determinations of material fact that occurred in the state court . . . are 'presumed to be correct' unless 'rebutt[ed] . . . by clear and convincing evidence.' 28 U.S.C. § 2254(e)(1)." *Nance*, 392 F.3d at 289.

### C.  Maghee's First Amendment Claim

The court first notes that Maghee's claim falls in that "ambiguous borderland" between habeas corpus actions and actions brought under 18 U.S.C. § 1983. *See Offet v. Solem*, 823 F.2d 1256, 1257-58 (8th Cir. 1987). His claim for restoration of his good time credits relates directly to the length of his confinement, and has been brought properly in a petition for writ of habeas corpus. *See Otey v. Hopkins*, 5 F.3d 1125, 1130 (8th Cir. 1993) ("The central focus of the writ of habeas corpus is to provide a remedy for prisoners who are challenging the fact or duration of their physical confinement. . . ."); *cf. Offet*, 823 F.2d at 1257. On the other hand, his broader attack on the constitutionality of the institution's handling of legal mail, standing alone, would be addressed properly in an action under section 1983. Here, however, Maghee claims the sanction depriving him of good time credits was the result of the application of an unconstitutional rule relating to legal mail, resulting in the overlap between the two types of actions. Because the decision on Maghee's claim could affect the length of his sentence, the court concludes he has employed the proper vehicle for consideration of his claim by filing a petition for writ of habeas corpus.

Turning to the merits of Maghee's First Amendment claim, the court notes the respondent suggests that whether or not Officer Isaac's actions violated Maghee's First Amendment rights is irrelevant to the outcome of Maghee's petition because Maghee did not have the right "to resist a valid order if he believed it may [have] violate[d] his rights. There is no right to refuse such an order." Doc. No. 28 at 8 n.3 (citing *Smith*

*v. State*, 542 N.W.2d 567 (Iowa 1996)). The court cannot easily reach a similar conclusion. The Supreme Court has found it "obvious[]" that "one cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution." *Wright v. Georgia*, 373 U.S. 284, 291-92, 83 S. Ct. 1240, 1245, 10 L. Ed. 2d 349 (1963); *accord Hardin v. Estelle*, 365 F. Supp. 39, 43-44 (W.D. Tex. 1973). Although prisoners lose many of the privileges and constitutional protections afforded members of the general public simply by virtue of the prisoners' incarceration, the Supreme Court has noted that prisoners nevertheless "do not shed all constitutional rights at the prison gate." *Sandin v. Conner*, 515 U.S. 472, 485, 115 S. Ct. 2293, 2301, 132 L. Ed. 2d 418 (1995); *see Bell v. Wolfish*, 441 U.S. 520, 545, 99 S. Ct. 1861, 1877, 60 L. Ed. 2d 447 (1979) (inmates "do not forfeit all constitutional protections by reason of their conviction and confinement in prison"). The Eighth Circuit has recognized the "delicate balance required to weigh the constitutional rights of inmates against legitimate regulations imposed by those charged with the 'inordinately difficult task of operating a prison.'" *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994) (quoting *Quinn v. Nix*, 983 F.2d 115, 118 (8th Cir. 1993)). "[T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 2975, 41 L. Ed. 2d 935 (1974).

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 2804, 41 L. Ed. 2d 495 (1974); *accord Leonard v. Nix*, 55 F.3d 370, 374 (8th Cir. 1995). As the Supreme Court held in *Pell*, "challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals

of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Id.* In this regard, the Court cited several goals of the corrections system which must be balanced when considering a claim such as Maghee's:

> An important function of the corrections system is the deterrence of crime. The premise is that by confining criminal offenders in a facility where they are isolated from the rest of society, a condition that most people presumably find undesirable, they and others will be deterred from committing additional criminal offenses. This isolation, of course, also serves a protective function by quarantining criminal offenders for a given period of time while, it is hoped, the rehabilitative processes of the corrections system work to correct the offender's demonstrated criminal proclivity. Thus, since most offenders will eventually return to society, another paramount objective of the corrections system is the rehabilitation of those committed to its custody. Finally, central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves. It is in the light of these legitimate penal objectives that a court must assess challenges to prison regulations based on asserted constitutional rights of prisoners.

*Pell*, 417 U.S. at 823, 94 S. Ct. at 2807.

Fortunately, this court need not "reinvent the wheel" in analyzing whether a prison can require inspection of mail to and from an inmate's attorney. The institution's right to inspect such mail for contraband has long been established. *See Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981) (citing *Wolff v. McDonnell*, 418 U.S. 539, 576-77, 94 S. Ct. 2963, 2984-85, 41 L. Ed. 2d 935 (1974)). Maghee does not challenge the institutional policy in this regard. His challenge concerns whether his legal mail could

be opened for inspection outside of his presence. Again, the law is well-established that legal mail must be inspected "in the presence of the prisoner." *Id.*

The difficulty in the present case arises from the conflicting *facts*, not the state of the law. Maghee claims Officer Isaac either wanted to inspect Maghee's legal mail outside of his presence, and then reseal the letter for mailing, or the officer was willing to inspect the letter in Maghee's presence, but then wanted to take the letter back to his desk to reseal it for mailing. In either event, Maghee objected to the officer having the unsealed letter in his possession outside of Maghee's presence.

On the other hand, Officer Isaac's statement indicates he simply told Maghee the letter would have to be inspected before it was sent out, and Maghee could either open it for inspection and then reseal it, or he could obtain another envelope. When Maghee and Officer Isaac could not reach an agreement regarding handling of the letter, Maghee said he would give the letter to another officer the next day, which he proceeded to do. Officer Isaac viewed Maghee's action as a refusal to follow his instruction to have the letter inspected prior to placing it in the mail.

The court finds no First Amendment violation here. There is insufficient evidence to conclude Officer Isaac told Maghee the letter would be, or had to be, inspected outside of Maghee's presence. There also is no evidence to suggest that if the letter had been inspected for contraband in Maghee's presence, and then Officer Isaac took the letter back to his desk to reseal it for Maghee, the officer would have read the letter. One could conclude just as easily that Officer Isaac was offering to assist Maghee by resealing the letter for him. Maghee suggests Officer Isaac had several alternatives to writing up the disciplinary notice. Similarly, Maghee had alternatives in the way he chose to deal with the matter of the letter.

Because the court finds no evidence that Maghee's First Amendment rights were violated, the court turns to consideration of the ALJ's decision that Maghee violated the Disciplinary Policy. As the Eighth Circuit has observed:

> Under well established Supreme Court precedent, a prison administrative sanction will stand if there is some evidence to support the sanction. *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). Thus, courts are to give deference to prison officials and should intercede in prison discipline cases only when the sanctions are wholly unsupported by the record. *Id.* at 455-56, 105 S. Ct. 2768 ("Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.")

*Gomez v. Graves*, 323 F.3d 610, 612 (8th Cir. 2003).

Maghee agrees "[t]here is 'some evidence' that he did not follow the original officer's directive in this case," and he notes that when considering only the sufficiency of the evidence, he has "no grounds to proceed." Doc. No. 31 at 2. He argues, however, that this is not the issue, but rather the issue is whether his "First Amendment rights were violated when the officer told him that he was going to examine his letter outside of his presence." *Id.* The court has found, above, that no such constitutional violation occurred. Indeed, there is insufficient evidence to conclude the officer told Maghee he was going to examine the letter outside of Maghee's presence. As a result, the court is left with precisely the type of claim that Maghee agrees must fail – a claim based on the sufficiency of the evidence.

The court finds there is some evidence to support the ALJ's decision that Maghee violated the Disciplinary Policy. Accordingly, Maghee's claim should fail.

### III.  CONCLUSION

For the reasons discussed above,  **IT IS RECOMMENDED**, unless any party files objections[2] to the Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1)(C) and Fed. R. Civ. P. 72(b) within ten (10) days of the service of a copy of this report and recommendation, that Maghee's petition for writ of *habeas corpus* be denied.

**IT IS SO ORDERED.**

**DATED** this 11th day of May, 2005.

_____
PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[2]Objections must specify the parts of the report and recommendation to which objections are made. Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections.  *See* Fed. R. Civ. P. 72.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.  *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 475, 88 L. Ed. 2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).